Present:  All the Justices

SUBARU OF AMERICA, INC.

OPINION BY JUSTICE A. CHRISTIAN COMPTON

v.  Record No. 971821                      June 5, 1998

DEBORA C. PETERS

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Mosby G. Perrow, III, Judge

This is the first case we have decided by written opinion under the Virginia Motor Vehicle Warranty Enforcement Act (the Act), Code §§ 59.1-207.9 through –207.16:1, since its 1984 adoption.  Acts 1984, ch. 773.

The Act, Virginia's so-called "Lemon Law," generally provides that if a consumer has purchased a motor vehicle for nonbusiness purposes and reports, within a specified period of time, a defect or nonconformity covered by the motor vehicle manufacturer's express warranty, the manufacturer or its agent must perform the repairs necessary to correct the problem.  If the vehicle cannot be conformed to the warranty after a reasonable number of attempts, the consumer is entitled to replacement of the vehicle or refund of the purchase price.

The first state lemon law was enacted by the Connecticut legislature in 1982.  Since that time, a majority of states has enacted similar legislation, although no two lemon laws are identical.  Noralyn O. Harlow, Annotation, Validity, Construction, and Effect of State Motor Vehicle Warranty Legislation (Lemon Laws),

51 A.L.R.4th 872, 877 (1987).  The General Assembly patterned Virginia's Act after Connecticut's.  Carol S. Nance, Note, Virginia's Lemon Law: The Best Treatment For Car Owner's Canker?, 19 U. Rich. L. Rev. 405, 425 (1985).

A consumer suffering a loss by reason of a violation of any provision of the Act may bring a civil action to enforce such provision.  Code § 59.1-207.14.  The Act does not impair or limit a consumer's rights under any other law.  Code §§ 59.1-207.10 and -207.13(F).

In 1996, appellee Debora C. Peters filed this action against appellant Subaru of America, Inc., arising from the plaintiff's purchase of a used motor vehicle manufactured by defendant.  Even though plaintiff, in an amended motion for judgment, sought recovery against defendant on several theories, the case evolved into an action based solely on the Act and its remedies.

The defendant denied plaintiff is entitled to the relief sought.  Additionally, it filed a pre-trial motion for summary judgment asserting "the Act applies only to the purchase by a consumer of a new motor vehicle."  The trial court denied the motion.

During a jury trial, the court denied defendant's motions to strike plaintiff's evidence both at the conclusion of the plaintiff's case-in-chief and at the conclusion of all the evidence. The jury found in favor of the plaintiff and, after assessing

attorney's fees against defendant, the trial court entered judgment for the plaintiff in the amount of $23,987.35. We awarded defendant this appeal from the May 1997 judgment order.

The facts are virtually undisputed. The subject of this controversy is a 1994 Subaru Legacy four-door station wagon.

The first sale of the vehicle occurred on April 7, 1994 when defendant sold it to Hertz Corporation, Greensboro, North Carolina, for use as a rental car. The second sale took place in November 1994 when defendant purchased the vehicle from Hertz and consigned it to the Greensboro Auto Auction for sale. The third sale occurred in December 1994 when Star Imports, Inc., purchased the vehicle at auction for resale at the Star Imports dealership in Lynchburg, Virginia.

The fourth sale was to the plaintiff, a resident of Appomattox County. On March 20, 1995, she purchased the vehicle from Star Imports for her "personal use." The odometer registered 18,919 miles.

At the time of purchase, the plaintiff was entitled to the benefits of the balance of the defendant's vehicle warranty. The warranty's "basic coverage" lasted for three years or 36,000 miles, "whichever comes first." Warranty coverage began on April 7, 1994, the date the car was "delivered to the first retail purchaser," according to the warranty.

On appeal, defendant assigns error to the trial court's denial of the summary judgment motion and denial of its "motion to strike at the close of the plaintiff's evidence." These assignments of error present three questions.

The first question is whether the Act applies only to the purchase of new as opposed to "used" vehicles. We hold that it applies to both, as will be demonstrated by analysis of pertinent provisions of the Act.

We look first to the Act's title, "Virginia Motor Vehicle Warranty Enforcement Act." Unlike some other state lemon laws, the General Assembly made no distinction in the title between "new" or "used" vehicles. See Connecticut's lemon law entitled "New Automobile Warranties." Conn. Gen. Stat. Ann., Title 42, § 179 et seq. (West 1992).

Moreover, in Code § 59.1-207.10, a preamble setting forth the intent of the Act, the General Assembly referred throughout to "a" motor vehicle and not to a "new" motor vehicle. This is a plain indication that the Act is meant to apply to the vehicles, new and used, that qualify for coverage under the Act. For example, the statute's first sentence provides: "The General Assembly recognizes that a motor vehicle is a major consumer purchase, and there is no doubt that a defective motor vehicle creates a hardship for the consumer." Likewise, the statute's third sentence provides: "It is further the intent of the General Assembly to provide the statutory

4

procedures whereby a consumer may receive a replacement motor vehicle, or a full refund, for a motor vehicle which cannot be brought into conformity with the express warranty issued by the manufacturer." In both the Act's title and preamble, the focus is upon the warranty, and not upon the vehicle's status as new or used.

The defendant's reliance on references in the Act to a "new" motor vehicle, to support its contention that the Act applies only to new vehicles, is misplaced. The term "new" is employed five times in the Act. The word is found at four places in Code § 59.1-207.11, where the terms "lemon law rights period," "manufacturer's express warranty," "serious safety defect," and "significant impairment" are defined; it is found in Code § 59.1-207.12, dealing with warranty conformity.

However, the word "new" is employed each time in the context of warranties issued when the vehicle is indeed "new." Instead of limiting the Act's applicability to a "new vehicle," the Act focuses upon the new vehicle warranty. In other words, the Act concentrates on the manufacturer's written factory warranty for the particular vehicle, and whether that vehicle can be brought into conformity with the warranty's terms.

The second question is whether this plaintiff qualifies as a "consumer," as defined in the Act, so that she is entitled to claim the benefits of the Act.

5

According to Code § 59.1-207.11, the term "consumer" means "the purchaser, other than for purposes of resale, of a motor vehicle used in substantial part for personal, family, or household purposes, and any person to whom such motor vehicle is transferred for the same purposes during the duration of any warranty applicable to such motor vehicle, and any other person entitled by the terms of such warranty to enforce the obligations of the warranty."

The defendant contends the plaintiff is not a "consumer." It says, "The purpose of this provision is to preclude the application of the Act to business vehicles or vehicles used for business purposes." Defendant continues: "Hertz Corp., the original owner, was not a consumer. When Hertz purchased the automobile and placed it into service as a rental car, the Act no longer applied to the automobile because it was being used substantially for business purposes. Accordingly, subsequent purchasers, including Peters, do not meet the definition of a consumer because no one after Hertz purchased from a consumer." In other words, according to defendant, "Those who purchased 'downstream' from Hertz cannot bring a claim under the Act because they do not qualify as consumers. Peters' rights under the Act can rise no higher than the rights of her predecessors in title." We do not agree with defendant.

We will assume this vehicle had been employed substantially for business purposes by Hertz, a fact not shown by the record. Nonetheless, the vehicle's subsequent sale to a nonbusiness

6

transferee caused it to be included within the Act's "consumer" definition. The record shows the plaintiff devoted the vehicle to her personal use for approximately 66% of the total odometer mileage at the time of trial. This clearly shows the vehicle was "used in substantial part for personal . . . purposes," according to the first clause of the definition. Also, she was "any person to whom such motor vehicle [was] transferred" for those purposes "during the duration of [the] warranty applicable to such motor vehicle," according to the second clause of the definition.

Contrary to defendant's argument, the definition of "consumer" nowhere denies benefits to a subsequent transferee who is "downstream" from a business buyer. Thus, a buyer, such as this plaintiff, experiencing a "significant impairment," as defined in the Act, during the balance of the express factory warranty qualifies as a "consumer," whether or not a prior owner had employed the vehicle for business purposes.

The third question is whether the plaintiff established a claim for benefits under the Act. Several portions of the Act are relevant to this issue.

Code § 59.1-207.12 requires conformity to all warranties. It provides: "If a new motor vehicle does not conform to all warranties, and the consumer reports the nonconformity to the manufacturer, its agents, or its authorized dealer during the manufacturer's warranty period, the manufacturer, its agent or its

7

authorized dealer shall make such repairs as are necessary to conform the vehicle to such warranties, notwithstanding the fact that such repairs are made after the expiration of such manufacturer's warranty period."

Code § 59.1-207.13(A) provides that "[i]f the manufacturer, its agents or authorized dealers do not conform the motor vehicle to any applicable warranty by repairing or correcting any defect or condition, including those that do not affect the driveability of the vehicle, which significantly impairs the use, market value, or safety of the motor vehicle to the consumer[,] after a reasonable number of attempts during the lemon law rights period," the manufacturer shall either replace the motor vehicle, or accept return of the vehicle and refund to the consumer the full purchase price.

Subsection (B) of the foregoing statute creates a presumption that may be employed, if needed, by a consumer to establish "a reasonable number of attempts" and significant impairment under subsection (A). As relevant, subsection (B) provides: "It shall be presumed that a reasonable number of attempts have been undertaken to conform a motor vehicle to any warranty and that the motor vehicle is significantly impaired if during the period of eighteen months following the date of original delivery of the motor vehicle to the consumer either: 1. The same nonconformity has been subject to repair three or more times by the manufacturer, its agents or its

authorized dealers and the same nonconformity continues to exist;" or "3. The motor vehicle is out of service due to repair for a cumulative total of thirty calendar days. . . ."

The "lemon law rights period" is defined as "the period ending eighteen months after the date of the original delivery to the consumer of a new motor vehicle.  This shall be the period during which the consumer can report any nonconformity to the manufacturer and pursue any rights provided for under this chapter."  Code § 59.1-207.11.

The word "nonconformity" is defined as "a failure to conform with a warranty, a defect or a condition, including those that do not affect the driveability of the vehicle, which significantly impairs the use, market value, or safety of a motor vehicle."  Id.

Dwelling on the presumption set forth in § 59.1-207.13(B), and other language of the subsection, the defendant argues the plaintiff failed to establish that the "same nonconformity" was "subject to repair" three times during the 18-month lemon law period.  This argument is without merit.

The case was not submitted to the jury on the presumption. Instead, the jury was instructed on the provision of subsection (A) of the statute requiring replacement of the vehicle or refund of the purchase price if there was a failure to conform the vehicle to the warranty "after a reasonable number of attempts during the lemon law rights period."

The evidence was sufficient to allow the jury to find, without the benefit of the presumption, that the defendant or its agents were afforded a reasonable number of attempts to conform the vehicle during the 18-month period commencing April 7, 1994 and ending October 7, 1995. It is unnecessary to embark upon a detailed recital of the evidence of plaintiff's unsuccessful efforts to have defendant and its dealers conform the vehicle to defendant's warranty. Through her testimony supplemented by documentary evidence, the plaintiff established she experienced "constant" problems with the operation of the vehicle following its purchase.

She repeatedly reported defects to defendant and its dealers. These reports commenced June 2, 1995 ("brakes were messing up") and continued: June 19 — "motor was coughing and then it was going into neutral"; July 20 — "motor was still cutting off and the transmission . . . was jerking and would go in and out of neutral"; July 26 — "transmission was still slipping and cutting off and the brakes were still the same thing because they had never fixed them"; August 30 — brake problems and "remanufactured transmission was put in it"; and September 8 — "transmission was whining."

Additionally, the plaintiff made repeated complaints beyond the basic lemon law rights period because the warranty problems had not been corrected by defendant or its agents. Code § 59.1-207.13(C) provides, "The lemon law rights period shall be extended if the manufacturer has been notified but the nonconformity has not been

10

effectively repaired by the manufacturer, or its agent, by the expiration of the lemon law rights period." The plaintiff notified the defendant by letter dated September 18, 1995 of the "constant problems with my car." She wrote: "My car cuts off while you are driving & when you slow down it will cut off. The transmission goes into neutral while you are driving. The car jerks when you pull off. The brakes grab and do not properly stop my car."

Finally, in arguing plaintiff failed to establish the necessary elements of a claim under the Act, defendant maintains plaintiff did not "prove a nonconformity covered by the warranty." The warranty covers "any repairs needed to correct defects in material or workmanship reported during the applicable warranty period which occur under normal use." Defendant argues plaintiff merely "testified about her complaints, but admitted that she was not a mechanic or expert." According to defendant, plaintiff offered no testimony "regarding the applicability of the warranty to the alleged nonconformity." We disagree.

Our previous summary of the facts demonstrates there was abundant evidence presented by the plaintiff, testimonial and documentary, to permit the jury to find that the engine, transmission, and brake problems resulted from defects in material or workmanship. Indeed, numerous repair orders and invoices from Star Imports, and an Amherst Subaru dealer to which plaintiff also took the vehicle for repair, show that, in most instances, plaintiff

was not charged for work done in connection with her complaints. For example, plaintiff was not charged for replacing the transmission in August 1995. The jury was justified in concluding that, because no charges were assessed, the dealers considered the warranty applied to the nonconformities about which complaint was made.

Consequently, we conclude the trial court did not err, and the judgment below will be

Affirmed.

12